ESTATE OF Larry MICKEY, Lynda
Mickey Haines, Executrix, et
al., Plaintiffs,

v.

UNITED STATES, Defendant.

No. 535–76T.

United States Court of Federal Claims.

May 30, 2006.

## ORDER

MARIAN BLANK HORN, Judge.

The court is in receipt of an April 17, 2006 request by the defendant to file a motion to consolidate and to schedule a status conference in the 31 long since, closed cases listed in Appendix A to this order.[1] Plaintiffs' counsel submitted his opposition to the defendant's motion on May 18, 2006. The clerk's office did not file the untimely opposition. Although untimely, in order to provide a complete review of the matters raised, the clerk's office shall **FILE** plaintiffs' opposition, by leave of the court.

This order addresses the defendant's motion with respect to all 31 cases listed by the defendant, albeit focusing as the defendant did on the proposed lead "sanctions" case, *Estate of Larry Mickey, Lynda Mickey Haines, Executrix v. United States*, No. 535–76T, as exemplary. The attached 31 cases are part of a larger group of 231 related tax refund cases filed in this court by plaintiffs' attorney Charles L. Abrahams on behalf of professional Canadian hockey players, beginning in 1976.[2] While the cases were active on the court's docket, defendant sought sanctions against Mr. Abrahams, including in the 31 cases, and Mr. Abrahams did likewise against the defendant in many of the 231 related hockey player, tax refund cases. The court notes that once again Mr. Abrahams also raises the issue of sanctions against the United States in his response to defendant's current motion.

Defendant's proposed lead "sanctions" case of *Estate of Larry Mickey, Lynda Mickey Haines, Executrix v. United States*, No. 535–76T, provides a typical chronology of these cases in which many unexplained delays, motions, including sanctions motions, and false starts occurred. The docket in *Mickey* reflects that the complaint was filed in 1976. The other cases trickled in thereafter over a period of many years. All the existing, related hockey player, tax refund cases were reassigned to the undersigned judge in 1986, and additional related cases trickled in thereafter, all filed by Mr. Abrahams on behalf of the individual plaintiffs. In *Mickey*, as in a number of other cases, the plaintiff filed a motion to dismiss, a sanctions motion was filed by the defendant shortly thereafter, and

1. Defendant explains that, due to the recent retirement of the Chief of the Court of Federal Claims Section in the Tax Division, some "spring cleaning" was performed and, as a result, the Section was interested in "facilitating resolution" of sanctions motions on the closed cases the Department believed were still open. Although acknowledging that judgment was entered in all the related hockey player, tax refund cases, defendant argues that the entry of judgment and closure of the cases had no impact on the requests for sanctions in the 31 cases.

2. For a more complete and detailed explanation of the extensive, common, procedural history of the 231 related hockey player, tax refund cases, see this court's lengthy opinion in *Frederick E. Speck and Linda L. Speck v. United States*, 28 Fed.Cl. 254 (1993), *appeal dismissed*, No. 93–5144, 1994 WL 745411 (Fed.Cir. Apr.20, 1994).

judgment subsequently was entered dismissing the case.

For example, plaintiff Lynda Mickey Haines, Executrix, sought tax refunds in the amount of $1,095.06 for 1968, $541.00 for 1970, and $2,201.00 for 1971, for a total of $3,837.06. Due to the taxpayer-specific nature of the complaints and the nature of the claims, trials were planned in *Mickey* and for many of the cases once it became clear that a negotiated damages result was not appropriate in any of the cases. In *Mickey,* witness lists were due on September 22, 1993 and exhibit lists were due on October 20, 1993. When plaintiff failed to file either, defendant filed a motion for summary judgment on October 22, 1993, arguing that plaintiff cannot prove the case at trial. At a pretrial conference on October 25, 1993, the court ordered plaintiff to file a response to the defendant's motion for summary judgment by November 3, 1993, in order to determine whether to proceed with the trial scheduled to commence on November 8, 1993. As indicated above, on November 1, 1993, plaintiff instead filed a motion to dismiss the case. On November 19, 1993, defendant filed a motion for sanctions, costs and attorney fees. Therefore, plaintiff sought to withdraw prior to the date the government's sanctions motion was filed. On December 1, 1995, the court dismissed the *Mickey* case, with prejudice, for failure to prosecute and also granted the defendant's motion for summary judgment. Judgment issued on December 12, 1995, dismissing the *Mickey* complaint, with prejudice.

Defendant complains in its sanctions motion that Mr. Abrahams was required to file pretrial submissions in the *Mickey* case by October 20, 1993, and did not do so. Defendant's sanctions motion also notes, however, that on October 22, 1993, Mr. Abrahams provided defendant's counsel, by facsimile copy, a letter indicating that Mr. Abrahams was going to seek a dismissal of the case. The defendant's sanctions motion then notes that Mr. Abrahams reiterated his intention to seek a dismissal of the case at the pretrial

hearing with the court and with defendant's counsel on October 25, 1993. Mr. Abrahams alleges in his response to the sanctions motion that he had discovered a few days prior to the October 25, 1993 hearing that the Department of Justice was going to request sanctions against him in the amount of $350,000.00 in a number of cases. On October 31, 1993, Mr. Abrahams, therefore, signed a motion to dismiss the case, which was filed by the clerk's office on November 1, 1993. Defendant argues that Mr. Abrahams should have notified the government and the court sooner of his intentions to seek a dismissal of the case. Defendant seeks costs and attorney fees.[3]

Although Mr. Abrahams initially apologized for the delay in filing the motion to dismiss, he argued that he believed in the merits of the hockey cases. Mr. Abrahams also made reference to his then pending bankruptcy, and stated that he could not afford the "prohibitive costs of litigation." In his more recent opposition to defendant's motion, this time, without apologizing, Mr. Abrahams once again offers arguments on the merits and procedural history of the related hockey player, tax refund cases, arguments which were specifically rejected by this court numerous times in its written opinions.

It is noteworthy that both Rule 11 of the Federal Rules of Civil Procedure (Fed.R.Civ. P.) and Rule 11 of the Rules of the United States Court of Federal Claims (RCFC) state that the court, on its own initiative, may give notice and an opportunity to respond to a party for whom sanctions may be in order, however, "[m]onetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned." Fed.R.Civ.P. 11(c)(2)(B); RCFC 11(c)(2)(B). The Advisory Committee Notes to the 1993 amendments issued with this rules change state that monetary sanctions shall be imposed "only if the show cause order is issued

---

3. During this same period, Mr. Abrahams was undergoing bankruptcy proceedings. He filed a bankruptcy petition on October 27, 1992, and a final bankruptcy decree was issued on September 30, 1997. *See In re Charles L. Abrahams,* No. 92–12756 (Bankr.S.D.Cal.1997).

before any voluntary dismissal.... Parties settling a case should not be subsequently faced with an unexpected order from the court leading to monetary sanctions that might have affected their willingness to ... voluntarily dismiss a case." Defendant's formal notice of intent to seek sanctions was served on plaintiff's counsel and filed with the court after plaintiff and plaintiff's counsel had requested to withdraw. The court, however, did not issue a show cause notice in the 31 cases at any time and judgment on the cases has been entered.

In its present motion, defendant cites the opinion issued by the Court of Appeals for the Federal Circuit in *Chemical Engineering* for the proposition that sanctions may be decided by a trial court after judgment has been entered. *Chemical Eng'g Corp. v. Essef Indus., Inc.,* 795 F.2d 1565, 1574 (Fed.Cir. 1986). A closer look at that case is instructive. In *Chemical Engineering,* the Federal Circuit was applying the law of the particular regional circuit court in which appeals from the trial court would normally be brought, in that case the Seventh Circuit Court of Appeals. *Id.* at 1573–74. The Federal Circuit in *Chemical Engineering* considered the Seventh Circuit case of *Popeil Brothers, Inc. v. Schick Electric, Inc.,* which stated, with respect to Fed.R.Civ.P. 37 discovery sanctions, "[w]e conclude that Rule 37(c) expenses and fees must be timely sought prior to judgment ... and that if the judgment is silent in regard thereto, they are deemed waived or denied." *Chemical Eng'g Corp. v. Essef Indus., Inc.,* 795 F.2d at 1573 (quoting *Popeil Bros., Inc. v. Schick Elec., Inc.,* 516 F.2d 772, 778 (7th Cir.1975)). The Federal Circuit in *Chemical Engineering* noted that the sanctions motion was presented to the trial court in *Popeil Brothers,* and rejected by the court after the judgment had been entered, appealed to the Court of Appeals, decided by the appellate court and remanded, and that the emphasis in the *Popeil Brothers* decision was on the trial court having "almost absolute discretion" to award sanctions or not to award sanctions. *Chemical Eng'g Corp. v. Essef Indus., Inc.,* 795 F.2d at 1574.

The Federal Circuit came to a different result in *Chemical Engineering* than the Seventh Circuit did in *Popeil Brothers,* approving sanctions issued by the trial court: "We do not believe that the Seventh Circuit would hold, nor would we, that a losing party, by filing a notice of appeal the moment judgment is entered, could thereby divest the district court of all discretion to award appropriate post-trial relief within weeks thereafter, and well before the appeal is ready to be heard by the court of appeals." *Chemical Eng'g Corp. v. Essef Indus., Inc.,* 795 F.2d at 1574–75. Thus, timeliness, as well as "almost absolute discretion" vested in the trial court, appear to have driven the Federal Circuit's decision to approve sanctions imposed after judgment in *Chemical Engineering.* Therefore, in exercising its discretion, this court will consider the facts and circumstances of the related hockey player, tax refund cases at issue to weigh the appropriateness of sanctions, based on common sense and reasonableness under the circumstances.

Exemplary plaintiff Lynda Mickey Haines, Executrix, sought to withdraw her complaint on November 1, 1993. Subsequent to the plaintiff's action, the government sought sanctions. Still later, on December 12, 1995, final judgment was entered against the plaintiff. Sanctions are designed to deter repetition of the cited conduct, *see* Fed.R.Civ.P. 11(c)(2), RCFC 11(c)(2), and the deterrent impact inevitably diminishes over time. Here, the case was withdrawn by Mr. Abrahams on behalf of the plaintiff at the "pre-trial conference" stage, shortly before trial was to commence on November 8, 1993. In a lengthy sanctions hearing already conducted in one of the cases, as well as a number of trials conducted by the court in these related hockey player, tax refund cases, it became abundantly clear that Mr. Abrahams' intermittent, perhaps convenient, lapses of memory, even years ago, would make sanctions hearings at this time difficult and perhaps inconclusive. Throughout the years of proceedings Mr. Abrahams evidenced significant memory lapses. In his recent opposition to defendant's current motion, Mr. Abrahams also indicates that his files have been "confiscated." Given the conclusion below, however, it is not necessary for this court to figure out whether the files exist or are just not readily accessible. In addition, during many

of the proceedings in the 231 related cases, Mr. Abrahams evidenced serious signs of disorganization and inability to retrieve information from his files. Moreover, as noted above, Mr. Abrahams continues in his most recent submission to reargue points of fact and law which were specifically and frequently rejected by this court. Mr. Abrahams fails to comprehend that he was not successful in a single one of the related hockey player, tax refund cases he filed in this court *on behalf of both willing, and reluctant,* clients. Nonetheless, it is indicative of the resource commitment occasioned throughout the course of litigation in these related cases because of the repetitive nature of his attempt to argue previously decided issues.

The histories of the other 30 cases covered in defendant's motion are similar, albeit not identical to the case of *Estate of Larry Mickey, Lynda Mickey Haines, Executrix v. United States,* No. 535–76T, including difficulties in bringing the cases to trial, faulty or nonexistent plaintiffs' counsel and witness recollection, disorganized files and failure to cooperate by plaintiffs and plaintiffs' counsel. Although the court does not condone Mr. Abrahams' conduct, defendant cannot wait for over ten years after cases have been closed to try to further litigate now stale sanctions motions. Moreover, more than sufficient resources on the part of this court and the Department of Justice have already been expended to warrant cutting losses all around. Further expenditure of Treasury dollars and judicial, as well as executive branch, resources, to reopen the sanctions motions is in the judgment of the undersigned judge unwarranted. For the forgoing reasons, defendant's motions for sanctions in the 31 cases identified in Appendix A to this order are **DENIED.** Therefore, defendant's April 17, 2006 motion for leave to file its motion to consolidate the attached sanctions cases and to schedule a status conference to discuss sanctions is **MOOTED.**

 **IT IS SO ORDERED.**